# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00510-COA

**WESTFORD ASSET MANAGEMENT, LLC, ADAMS INTERNATIONAL TRADING, LTD AND JEFFERSON HOLDINGS INTERNATIONAL, INC.**                                        APPELLANTS

v.

**BATSON & BROWN, INC.**                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/29/2013 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT THOMAS SCHWARTZ |
| | JEFFREY MONROE WILLIAMS |
| | W. WAYNE DRINKWATER JR. |
| | MARGARET OERTLING CUPPLES |
| | JEFFREY WARD BERTUCCI |
| | SIMON TURNER BAILEY |
| ATTORNEY FOR APPELLEE: | A. MALCOLM N. MURPHY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | FOUND THAT APPELLEE'S LIEN HAS PRIORITY OVER APPELLANTS' DEED OF TRUST AND AWARDED APPELLEE ATTORNEY'S FEES |
| DISPOSITION: | REVERSED AND RENDERED - 04/21/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., ROBERTS AND MAXWELL, JJ.

### ROBERTS, J., FOR THE COURT:

¶1.     This case involves a priority dispute among creditors regarding property in Jackson, County, Mississippi.   Westford Asset Management LLC loaned money to real-estate developers.   After the developers defaulted on their loan, Batson & Brown, an engineering

firm, filed a lien against the property. However, Batson & Brown later released its lien so Westford could conduct a foreclosure sale. Batson & Brown and Westford both agreed that the foreclosure sale would not affect their respective priority rights.

¶2. Westford bought the property at the foreclosure sale. The Jackson County Circuit Court found that Westford's bid was commercially reasonable, and all of the loan proceeds went into the project. However, the circuit court also found that Westford purchased the property subject to Batson & Brown's lien. The circuit court also ordered Westford to pay Batson & Brown's attorney's fees. Westford appeals. We find the circuit court erred when it held that Westford acquired the property subject to Batson & Brown's lien. It follows that we find that the circuit court erred when it ordered Westford to pay Batson & Brown's attorney's fees. Accordingly, we reverse the circuit court's judgment and render a judgment in favor of Westford.

## FACTS AND PROCEDURAL HISTORY

¶3. In August 2004, Ocean Golf Investors LLC and Pine Island Inc. began a real-estate development called the Bayou Grand Project (the project). It involved merging several smaller parcels into a single master development for the construction of homes, condominiums, resort hotels, and a golf course. Ocean Golf hired TDX Construction Corporation as the construction manager. TDX was also responsible for approving payment of contractors' invoices. Batson & Brown was hired to provide engineering services.

¶4. Ocean Golf obtained financing through Westford Asset Management.[1] There were

---

[1] Westford owns Westford Funds, which owns Adams International Trading Ltd. Adams owns Jefferson Holdings International Inc.

2

six loan transactions over the course of thirty months. All of the loans were secured by the same deed of trust. A substantial portion of the funds went toward administrative fees, expenses, and prepaid interest.

¶5.     The first loan transaction was in June 2005. The proceeds of that loan paid a prior loan from another lender, provided Ocean Golf with money for site development and planning costs, and accounted for various fees, expenses, and prepaid interest associated with the transaction. Similar transactions occurred between July 2006 and December 2007. In total, Westford loaned Ocean Golf approximately thirty-seven million dollars. Batson & Brown never recorded a construction lien or filed a lis pendens notice at any time during the loan transactions.

¶6.     Before the sixth loan transaction, Ocean Golf defaulted on its obligations to Westford. Around the same time, Ocean Golf failed to pay contractors and consultants for their work on the project. Even so, Ocean Golf persuaded them to keep working. For several months, Ocean Golf told the contractors and consultants that Ocean Golf would obtain additional financing through another company, so Ocean Golf would be able to pay its debts. That never happened. Ocean Golf defaulted after the sixth loan transaction, so Westford was entitled to foreclose. In February 2008, Batson & Brown filed a notice of construction lien for approximately $222,000.

¶7.     In March 2008, TDX sued Ocean Golf and Westford. TDX sought to enforce its lien. Later, TDX amended its complaint and added Batson & Brown as defendants. A flurry of responsive pleadings resulted in a priority dispute over the property. Westford asserted that

it had priority, and it sought a judicial foreclosure. Ocean Golf allowed Westford to obtain a default judgment.

¶8. In July 2011, Westford and Batson & Brown filed a joint motion to authorize the release of Batson & Brown's lien to allow Westford to conduct a foreclosure sale. The joint motion contemplated that Westford would sell the property free of liens. After the foreclosure sale, Batson & Brown could enforce whatever rights it had – which would be determined at trial – against a $900,000 bond that Westford would post.[2] The intent of the joint motion was to make the property more marketable and maximize the value of the property during the foreclosure sale. The parties agreed that the joint motion would not affect any of the parties' claims.

¶9. In September 2011, the circuit court entered a foreclosure order and authorized the foreclosure sale. The foreclosure order also found Ocean Golf in default. Additionally, the circuit court ordered Westford to post the $900,000 bond, and ordered Batson & Brown to release its lien. Additionally, the foreclosure order let the parties continue litigating their priority dispute – only now against the bond, instead of the property. Otherwise, the foreclosure order stated that it did not affect the parties' claims. According to the foreclosure order, the bond was only to be drawn upon if the circuit court found that Batson & Brown's lien had priority over Westford's deed of trust. If not, the bond was to be released and discharged. Westford posted the bond. Batson & Brown released its lien.

_____

[2] The $900,000 bond was intended to stand in the place of the property. The bond would only be drawn upon to the extent that a final judgment determined that Batson & Brown's lien was superior to Westford's deed of trust.

4

¶10.    The foreclosure sale occurred during May 2012. Westford submitted the only bid. It was for thirty-two million dollars. Westford obtained a clear title to the property free of any liens via the commissioner's deed. Ocean Golf still owes Westford approximately twenty million dollars. In June 2012, the circuit court confirmed the effect of the foreclosure sale.

¶11.    A two-day bench trial began on August 20, 2012. Ultimately, the circuit court entered a judgment in favor of Batson & Brown. To be precise, the circuit court found that Westford's deed of trust predated all liens. The circuit court also found that the loan proceeds went toward construction of the project. Consequently, the circuit court held that Westford had priority before the foreclosure sale.

¶12.    However, the circuit court held that Westford bought the property subject to Batson & Brown's lien because Westford knew that there was an outstanding construction lien. Despite acknowledging that Batson & Brown had released its lien before the foreclosure sale, the circuit court reasoned that Batson & Brown could satisfy its lien from the bond. The circuit court acknowledged that Batson & Brown's lien was not filed within twelve months of becoming due, but the circuit court held that Westford had waived the timeliness of the lien because Westford did not bring it to the circuit court's attention sooner. Including attorney's fees, the circuit court awarded Batson & Brown approximately $340,000 – which was to be paid from the bond. Westford appeals.

**STANDARD OF REVIEW**

¶13.    "A circuit judge sitting without a jury is accorded the same deference with regard to

5

his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *City of Clinton v. Smith*, 861 So. 2d 323, 326 (¶16) (Miss. 2003). But "where the trial judge has applied an erroneous legal standard, we should not hesitate to reverse." *Quitman Cnty. v. State*, 910 So. 2d 1032, 1035 (¶6) (Miss. 2005). We review questions of law de novo. *Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041, 1046 (¶8) (Miss. 2002).

## ANALYSIS

### I.     FORECLOSURE SALE

¶14.   Westford argues that the circuit court erred by resolving the priority dispute in favor of Batson & Brown. Westford notes that the circuit court's foreclosure order said that the foreclosure sale would have no impact on the priority that existed before the sale. Additionally, Westford argues that notwithstanding the foreclosure order, a purchaser at a foreclosure sale does not buy foreclosed property subject to outstanding construction liens. Consequently, Westford reasons that its deed of trust had priority over Batson & Brown's construction lien.

¶15.   "The lien of a deed of trust securing a construction loan has priority over mechanics' and materialmen's liens only to the extent that: (a) the funds disbursed actually went into the construction, or (b) to the extent that the construction lender used reasonable diligence in disbursing the construction loan." *Peoples Bank & Trust Co. v. L&T Dev. Inc.*, 434 So. 2d 699, 707 (Miss. 1983). However, a conveyance via a trustee's deed following foreclosure is subject to a lien when the mortgagee's bid during the foreclosure sale is "so shockingly

6

low" that it is voidable. *Id*. at 711. Similarly, a conveyance following foreclosure may be subject to a lien "where the mortgagee has been guilty of other similarly inequitable conduct." *Id*.

¶16. The joint motion for the foreclosure sale stated that the joint motion would not affect the parties' claims. The circuit court's corresponding order also said that the foreclosure sale would not affect the parties' claims. After the foreclosure sale, the circuit court authorized the sale and found that Westford's thirty-two-million-dollar bid was "commercially reasonable." The circuit court certainly did not find that Westford's bid was "shockingly low." Likewise, the circuit court did not find that Westford had engaged in any inequitable conduct. And the circuit court found that all of the loan proceeds went into the project. Batson & Brown vigorously argue that the loan proceeds did not go into the project, because a significant portion of the proceeds went toward prepaid interest, loan-origination fees, and refinancing fees. However, the circuit court expressly found that all of the loan proceeds went into the project. Batson & Brown did not appeal the circuit court's decision. Because the circuit court found that all of the loan proceeds went into the project, and Westford's bid was not "shockingly low," the circuit court erred when it held that Westford acquired title to the property subject to Batson & Brown's lien. Consequently, we reverse the circuit court's judgment and render a judgment in Westford's favor.

## II. TIMELINESS OF THE LIEN

¶17. In this issue, Westford claims that the circuit court mischaracterized the timeliness of Batson & Brown's lien as though it was an affirmative defense. Westford argues that the

7

timeliness of a lien is an element of a claim to enforce a lien. Accordingly, Westford claims that Batson & Brown bore the burden of proving that its lien was timely. Because Batson & Brown did not prove that its lien was timely, Westford argues that the circuit court erred by finding that the lien had priority over Westford's deed of trust. Based on our resolution of Westford's first issue, this issue is moot.

### III. ATTORNEY'S FEES

¶18. Finally, Westford claims that the circuit court erred when it awarded Batson & Brown attorney's fees. Based on our resolution of Westford's first issue, we find that the circuit court erred when it awarded Batson & Brown attorney's fees. Therefore, we reverse the circuit court's judgment in that regard, as well.

¶19. **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**